NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESLY PARFAIT, | Hon. Dennis M. Cavanaugh |
| Petitioner, | |
| v. | Civil No. 11-4877 (DMC) |
| ERIC H. HOLDER, et al., | **OPINION** |
| Respondents. | |

**APPEARANCES**:

    LESLY PARFAIT, A 091 037 651
    Bergen County Jail
    160 South River Street
    Hackensack, New Jersey 07601
    Petitioner Pro Se

    TONY WEST, Assistant Attorney General, Civil Division
    DAVID J. KLINE, Director, District Court Section
    ELIZABETH J. STEVENS, Assistant Director
    United States Department of Justice, Civil Division
    450 Fifth Street, NW, Room 6100
    Washington, DC 20530
    Attorneys for Respondents

**CAVANAUGH, District Judge:**

Lesly Parfait, confined at the Bergen County Jail in Hackensack, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal-period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of respondents and the Department of Homeland Security ("DHS"). Respondents filed an Answer and several exhibits. For the reasons expressed in this Opinion, this Court holds that Petitioner's detention is governed by 8 U.S.C. § 1226(a), grants the Writ of Habeas Corpus, and directs that the Immigration Judge

conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2) to determine if he is a flight risk or danger to the community.

## I. BACKGROUND

Lesly Parfait, a native and citizen of Haiti, challenges his detention in the custody of DHS at the Bergen County Jail. The facts are undisputed. Parfait emigrated to the United States from Haiti in 1975 at the age of five. On March 9, 1995, his status was adjusted to lawful permanent resident. In 2001, Parfait married a United States citizen, and they have six American children and three grandchildren. On August 18, 2005, a judgment of conviction was filed against Parfait in the Supreme Court of New York, County of Dutchess, based on his guilty plea to third-degree robbery, contrary to § 160.05 of the New York Penal Laws; he was sentenced to a minimum term of imprisonment of two and one-third years to a maximum of seven years. On July 2, 2008, New York released Parfait into the community on parole.

On March 11, 2010, Parfait filed an I-90 Application to Replace Permanent Resident Card, which was approved. On March 10, 2011, immigration agents arrested Parfait at his home in Queens, New York, and served him with a Notice of Custody Determination and Notice to Appear.[1] The Notice of Custody Determination states that DHS will detain him pending a final determination in his case and he "may not request a review of this determination by an immigration judge because the Immigration and Nationality Act prohibits [his] release from custody." (Dkt. 3-7.) The Notice to Appear charges him with removal based on the August 18, 2005, conviction: conviction of an aggravated felony, a law relating to a theft offense or burglary

---

[1] Parfait asserts that DHS arrested him in his home on February 10, 2011, but DHS's paperwork shows the date was March 10, 2011. Whether DHS arrested him in February or March of 2011 is irrelevant for the purposes of this Opinion.

offense for which the term of imprisonment of at least one year was imposed, under 8 U.S.C. § 1227(a)(2)(A)(iii), and conviction of an aggravated felony, a crime of violence for which the term of imprisonment ordered is at least one year, under 8 U.S.C. § 1226(a)(2)(A)(iii). (Dkt. 3-8.) At this time, Parfait's removal proceeding is scheduled for a hearing before Immigration Judge Abrams on November 29, 2011.

Parfait executed the § 2241 Petition presently before this Court on August 8, 2011. The Clerk received it on August 22, 2011. In the Petition, Petitioner argues that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because he was released from incarceration on July 2, 2008, from incarceration for the crime forming the basis of his removal, but respondents did not take him into immigration custody until two and one-half years later on March 10, 2011. He seeks a Writ of Habeas Corpus directing respondents to either release him from custody or to provide a bond hearing before an Immigration Judge, pursuant to 8 U.S.C. § 1226(a).

By Order entered September 9, 2011, this Court ordered service on respondents and ordered respondents to file an answer and relevant documents. Respondents concede that DHS did not take Petitioner into custody until over two years after he was released from criminal incarceration for the crime underlying the notice to appear. Respondents argue that this Court should defer to the Board of Immigration Appeals's ("BIA") interpretation of 8 U.S.C. § 1226(c) in Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001), because the "when released" clause in § 1226(c) is ambiguous and the BIA's interpretation is reasonable. Respondents contend that, under the BIA's reading of § 1226(c), "an alien convicted of an enumerated offense was subject to mandatory detention even if there was a gap between his release from criminal custody and entry into DHS custody." (Answer at 11) (Dkt. 3 at 18).

3

## II. DISCUSSION

Petitioner argues that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration for the offense forming the basis of his removal, as the statute commands, but waited for over two and one-half years. The government argues that this Court should defer under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to the BIA's determination in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001). Thus, the question in this case is one of statutory interpretation, i.e., does "when [the alien] is released" mean "when [the alien] is released," or does it mean "any time after [the alien] is released?

A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c). See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005).

4

B. Exhaustion

The government has not raised failure to exhaust administrative remedies as an affirmative defense. Although 28 U.S.C. § 2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981). The Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F. 3d 757, 761-62 (3d Cir. 1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988). However, where the petitioner is challenging an agency's precedential interpretation of a statute, the purposes of exhaustion would not be served and exhaustion is not required. See Woodall v. Federal Bureau of Prisons, 432 F. 3d 235, 239 n.2 (3d Cir. 2005). In this case, exhaustion is not required because the BIA has interpreted § 1226(c)(1) in a precedential opinion as requiring detention in a case like Petitioner's. See Matter of Rojas, supra.

C. Relevant Statutes

The statutory authority to detain an alien depends on where the alien is in the removal process. Section 1226 governs the pre-removal-period detention of an alien; § 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B); and § 1231(a)(6)

provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision. Section 1226(a) authorizes the arrest, detention and release of aliens pending a decision on whether the alien is to be removed from the United States, except as provided in § 1226(c). See 8 U.S.C. § 1226(a). Section 1226(b) authorizes the Attorney General to "at any time . . . revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). Section § 1226(c), an exception to § 1226(a), mandates detention of specified criminal aliens during removal proceedings. See 8 U.S.C. § 1226(c). Section 1226 provides in full:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. **Except as provided in subsection (c) of this section** and pending such decision, the Attorney General –
>
>   (1) may continue to detain the arrested alien; and
>
>   (2) may release the alien on –
>
>     (A) bond of at least $1,500 . . ; or
>
>     (B) conditional parole; but
>
>   (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.
>
> (b) Revocation of bond or parole
>
> The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.
>
> (c) Detention of criminal aliens

6

(1) Custody

**The Attorney General shall take into custody any alien who -**

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

**when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.**

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(a), (b), (c) (emphasis added).[2]

---

[2] Congress passed 8 U.S.C. § 1226 in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546.

(continued...)

Section 1229, entitled "Initiation of removal proceedings," provides that, "[i]n the case of an alien who is convicted of an offense which makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction." 8 U.S.C. § 1229(d).

Section 1231(a)(2) requires the Attorney General to detain aliens during the removal period. See 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien"). Under § 1231(a)(1)(B), the removal period begins at **the latest** of several events. Specifically,

> [t]he removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

If DHS does not remove the alien within the removal 90-day period, then § 1231(a)(6) authorizes the Attorney General to either release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

---

²(...continued)
Implementation of § 1226(c) was deferred for two years, during which time pre-removal period detention was governed by § 303(b)(3), known as the Transition Period Custody Rules ("TPCR"). "The TPCR provided for individualized bond hearings for some aliens deportable for having committed certain crimes; the immigration judge could set bond after finding that the alien was not a danger to the community and was likely to appear for future proceedings. The TPCR expired on October 8, 1998, and the mandatory detention provision of 8 U.S.C. § 1226(c) became effective." Saysana v. Gillen, 590 F. 3d 7, 10 n.2 (1st Cir. 2009).

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6); see Zadvydas v. Davis, 533 U.S. 678 (2001).

D.  Statutory Authority for Petitioner's Detention

In this case, there is no dispute that Petitioner's removal period has not begun since his removal order is not administratively final. See 8 U.S.C. § 1231(a)(1)(B). Accordingly, Petitioner's pre-removal-period detention is necessarily governed by either § 1226(a), which allows the Immigration Judge to release an alien who is neither a flight risk nor a danger to the community, or the exception set forth in § 1226(c), which prohibits release on bond. The outcome of the case depends on the meaning of the following words in § 1226(c)(1): "The Attorney General shall take into custody any alien [specified in this section], when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). The government argues that this language mandates Parfait's detention beginning on March 10, 2011, because he was released from incarceration for an offense listed in § 1226(c) on July 2, 2008, even though Parfait was free in the community for more than two and one-half years. Specifically, the government argues that this Court is required to defer under Chevron to the BIA's interpretation of § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001), because this statutory language is ambiguous and it is reasonable to read "when" to mean "any time after," in which case the statute would read: "The Attorney General

9

shall take into custody any alien [covered by this section], **any time after** the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."

(1) What was the BIA's Holding in <u>Matter of Rojas</u>?

<u>Matter of Rojas</u> involved the alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c)(1) because the government failed to apprehend him at the time of his release from incarceration on parole for an offense covered by § 1226(c), and instead waited two days before taking him into custody. <u>See</u> <u>Matter of Rojas</u>, 23 I. & N. Dec. 117. First and foremost, the BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings. <u>Id.</u> at 120. The BIA observed that, under a natural reading of § 1226(c), the "concluding clauses, including the 'when released' clause, address themselves to the statutory command that the 'Attorney General shall take into custody' certain categories of aliens, rather than to the description of those categories." <u>Id.</u> at 121. The BIA stated that, although "[t]he statute does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement . . . Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing *all* criminal aliens." <u>Id.</u> at 122. The BIA

> construe[d] the phrasing "an alien described in paragraph (1)," as including only those aliens described in subparagraphs (A) through (D) of section [1226(c)(1)], and as not including the "when released" clause. Our interpretation is derived from the natural meaning of the statutory language, from the object and design of the statute as a whole, and from the history of the mandatory

> detention provisions. It is reinforced by practical concerns that would otherwise arise.

Matter of Rojas, 23 I. & N. Dec. at 125.

The BIA held that Rojas "is subject to mandatory detention pursuant to section [1226(c)(1)], despite the fact that he was not taken into Service custody immediately upon his release from state custody." Matter of Rojas, 23 I. & N. Dec. at 127.

Board member Lory Diana Rosenberg wrote a dissenting opinion in which six board members joined. Board member Rosenberg opined:

> The word "'when' [is defined] as 'just after the moment that.'" Alikhani v. Fasano, 70 F. Supp. 2d 1124, 1130 (S.D. Cal. 1999) (quoting *Webster's Third New International Dictionary* 2602 (3d ed. 1976). Therefore, as one court noted, the clear language of the statute requires that "the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release." Alikhani v. Fasano, supra, at 1130; see also Velasquez v. Reno, 37 F. Supp. 2d 663, 672 (D.N.J. 1999) ("This court cannot simply ignore the plain language of the statute which provides that an alien is to be taken into custody 'when the alien is released.'"). As another court noted, "Congress could have required custody 'regardless of when the alien is released' or 'at any time after the alien is released,'" but did not do so. Alwaday v. Beebe, 43 F. Supp. 2d 1130, 1133 (D. Or. 1999) . . . . These courts have concluded uniformly that "[t]he plain meaning of this language is that it applies immediately after release from incarceration, not to aliens released many year[s] earlier." Pastor-Camarena v. Smith, supra, at 1417-18.

Matter of Rojas, 23 I. & N. Dec. at 132-33 (Rosenberg, dissenting).[3]

The dissenting opinion of Board Member Rosenberg concludes:

---

[3] The Velasquez opinion cited in the dissenting opinion of Board Member Rosenberg was written by then New Jersey District Judge, now Third Circuit Court of Appeals Judge (Senior), Maryanne Trump Barry.

11

> The stretch of interpretation required by the majority's construction is not supported by the plain language of the statute and is unreasonable. The aliens described in paragraph (1) of section [1226(c)] are the ones who are deemed to be inadmissible and deportable for the cited violations and taken into custody when they are released from criminal incarceration. These are the aliens described in paragraph (2) as the ones who may not be released.
>
> The interpretation I reach from a straightforward reading of the plain language of the statute would allow for a hearing when an individual alien, such as this respondent, has already been released into the community, and it would authorize the detention of such individuals where warranted following an individualized hearing.

Matter of Rojas, 23 I. & N. Dec. at 139 (Rosenberg, dissenting).

(2) Must This Court Defer to the BIA's Interpretation of § 1226(c)?

If "Congress has directly spoken to the precise question at issue," a court and an agency "must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. In the immigration context, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987) (quoting Chevron, 467 U.S. at 843 n. 9). Deference to an agency's interpretation of a statute "is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, (2004).

In order to sustain the holding of Matter of Rojas, one would have to find that Congress's command that the Attorney General "shall take into custody any alien [specified in this section], when the alien is released," does not mean what it says, but instead commands that the Attorney

General "shall take into custody any alien [specified in this section], **any time after** the alien is released." Rather than taking the plain meaning of the statute, the government has re-written the statute. For example, what does it mean if a court orders that a defendant shall serve a term of supervised release when the defendant is released from incarceration? If this Court were to accept the BIA's reading of the word "when," then the supervised release could start two years after the defendant was released. The command that "the Attorney General shall take into custody any alien who [specified in this section] when the alien is released" means just what it says, i.e., the Attorney General shall take the alien into custody when the alien is released. Because taking the alien into custody more than two and one-half years after the alien is released does not fall within the command to take the alien into custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of the statute.

This Court's reading of § 1226(c) is shared by the overwhelming majority of federal district courts. See, e.g., Beckford v. Aviles, 2011 WL 3515933 (D.N.J. Aug. 9, 2011); Sylvain v. Holder, 2011 WL 2580506 at *7 (D.N.J. June 28, 2011) ("Respondents also argue that the statute is ambiguous because it is plausible that the word 'when' means 'after,' and, in that case, the statute commands that the government 'shall take the alien into custody after the alien is released.' This Court rejects the argument that 'when' means 'after.'"); Keo v. Lucero, 2011 WL 2746182 *3 (E.D. Va. July 13, 2011("[t]he term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun") (citations omitted); Louisaire v. Muller, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("Matter of Rojas, however, is wrong as a matter of law and contrary to the plain language of the statute. The clear purpose of § 1226(c)(1)

13

is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*, even if they are still serving part of their sentence out in the community, under 'parole, supervised release, or probation'"); Burns v. Cicchi, 702 F. Supp. 2d 281 (D.N.J. 2010) (holding that § 1226(c) does not apply where alien was taken into immigration custody more than 15 years after release from incarceration for covered offense); Dang v. Lowe, 2010 WL 2044634 (M.D. Pa. May 20, 2010) (holding that § 1226(c)(1) does not apply where alien was not taken into immigration custody until 10 years after release from incarceration for an enumerated offense); Khodr v. Adduci, 697 F. Supp. 2d 774, 774-75 (E.D. Mich. 2010) ("Because the Court finds that the statute at issue clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in Matter of Rojas"); Scarlett v. DHS, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) ("the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying criminal charges"); Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) ("the mandatory detention statute . . . does not apply to an alien . . . who has been taken into immigration custody well over a month after his release from state custody" for an enumerated offense). But see Diaz v. Muller, 2011 WL 3422856 (D.N.J. Aug 04, 2011) (finding "when released" to be ambiguous); Gomez v. Napolitano, 2011 WL 2224768 (S.D.N.Y. May 31, 2011) (same); Sulayao v. Shanahan, 2009 WL 3003199 (S.D. N.Y. Sept. 15, 2009) (same).

In addition, this Court's reading of § 1226(c) is consistent with the First Circuit's reading of the statute in <u>Saysana v. Gillen</u>, 590 F. 3d 7 (1st Cir. 2009).[4] In that case, Massachusetts released Mr. Saysana in 1991 from a five-year sentence for a 1990 (removable) conviction for indecent assault and battery; in 2007 DHS took him into custody under 8 U.S.C. § 1226(c)(1) and initiated removal proceedings charging that the 1990 conviction qualified as an aggravated felony rendering him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). See <u>Saysana</u>, 590 F. 3d at 9. In a precedent decision, <u>Matter of Saysana</u>, 24 I.&N. Dec. 602 (BIA 2008), the BIA held that Saysana was covered by the "when the alien is released" language of § 1226(c) because he was released from state custody on a dismissed charge after October 8, 1998. The First Circuit explained the BIA's decision as follows:

> [T]he Board concluded that the mandatory detention provision of 8 U.S.C. § 1226(c) applied to any alien with a qualifying conviction who was 'released' from *any* criminal custody after the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act ('IIRIRA') . . . , here October 8, 1998 . . . . In the Board's view, because Mr. Saysana had been released from state custody in 2005, he was subject to the mandatory detention requirement, even though the charge that formed the basis for his 2005 arrest . . . was not the crime that formed the basis for his removal proceedings.

<u>Saysana</u>, 590 F. 3d at 9.

The First Circuit held that, because the plain meaning of § 1226(c) was contrary to the BIA's reading of the statute, <u>Chevron</u> deference was not permissible.

> In our view, the natural reading of the statutory provision from top to bottom makes clear that the congressional requirement of

---

[4] Strangely, the government does not cite <u>Saysana</u> in its answer, even though the rationale of the First Circuit appears to be inconsistent with the government's reading of § 1226(c)(1). This Court can only presume that the government would try to limit <u>Saysana</u> to its facts.

15

> mandatory detention is addressed to the situation of an alien who is released from custody for one of the enumerated offenses. The statutory language embodies the judgment of Congress that such an individual should not be returned to the community pending disposition of his removal proceedings. Both the language and the structure of the statutory provision state this mandate in a clear and straightforward manner. As explained . . . in Oscar v. Gillen, 595 F. Supp. 2d 166[, 170] (D. Mass. 2009) (Tauro, J.):
>
>> The "when released" provision immediately follows the list of enumerated offenses, indicating that the former modifies the latter. Additionally, § 1226(c) provides that the alien shall be detained upon release regardless of whether he is subsequently arrested for the "same offense," reinforcing the notion that the entire clause applies to the list of enumerated offenses immediately preceding it.

Saysana, 590 F. 3d at 13-14.

The BIA overruled Matter of Saysana in Matter of Garcia Arreola, 25 I.&N. Dec. 267, 270 (BIA 2010). The government took Garcia Arreola into custody and charged him with removal in 2009, when the state dismissed unrelated criminal charges and released him. The removal was based on a state drug conviction on March 31, 1989, for which a 365-day sentence had been imposed. The Immigration Judge ruled that Garcia Arreola was not subject to mandatory detention under § 1226(c), and the government appealed. The BIA held that § 1226(c) "requires mandatory detention of a criminal alien only if he or she is released from non-DHS custody after the expiration of the TCPR [on October 8, 1998,] and only where there has been a post-TPCR release that is directly tied to the basis for detention under [§ 1226(c)(1)]." Id. at 269. The BIA determined that Garcia Arreola was not subject to mandatory detention under § 1226(c) where he was released from custody for an offense covered by § 1226(c) prior to October

8, 1998. In a footnote, the BIA indicated that it was not receding from Matter of Rojas, 23 I.&N. Dec. 117. Id. at n.4.

This Court finds that Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from the removable offense enumerated in § 1226(c). See, e.g., Matter of Rojas, 23 I.& N. Dec. at 131 ("The legislative mandate to detain is limited to those aliens who are taken into immigration custody when released from criminal incarceration" for an offense enumerated in § 1226(c)(1)) (Rosenberg, dissenting). Because the plain language of the statute commands that an alien is to be taken into custody "when the alien is released," this Court may not defer to the BIA's re-writing of the statute. Because the Attorney General did not take Petitioner into custody when he was released from incarceration on July 8, 2008, but allowed him to live in the community for more than two years before taking him into custody in 2011, Petitioner is not subject to the mandatory detention exception in § 1226(c)(1). Instead, Petitioner's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond, if the Immigration Judge finds that Petitioner is neither a flight risk nor a danger to the community.

This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a flight risk or danger to the community, within 10 days of the date of the entry of the Order accompanying this Opinion.

## III. CONCLUSION

For the reasons set forth above, the Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).

_____
DENNIS M. CAVANAUGH, U.S.D.J.

DATED: ____Oct 11____, 2011